ORIGINAL

1    edithafullermot

2    LEONARDO M. RAPADAS
     United States Attorney
3    KARON V. JOHNSON
     Assistant U.S. Attorney
4    Suite 500, Sirena Plaza
     108 Hernan Cortez Avenue
5    Agana, Guam 96910
     Telephone: (671) 472-7332/7283
6    Telecopier: (671) 472-7334

7    Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

JAN 1 0 2006

**MARY L.M. MORAN**
**CLERK OF COURT**

8
9        **IN THE UNITED STATES DISTRICT COURT**
10           **FOR THE TERRITORY OF GUAM**

11   UNITED STATES OF AMERICA,        )    CRIMINAL CASE NO. 01-00063
                                      )
12                    Plaintiff,      )
                                      )    **UNITED STATES OPPOSITION TO**
13           vs.                      )    **DEFENDANT'S MOTION TO DISMISS**
                                      )    **FOR LACK OF SPEEDY TRIAL**
14   EDITHA FULLER,                   )
                                      )
15                    Defendant.      )
     ─────────────────────────────────)

16

17        The United States opposes defendant's motion to dismiss for lack of speedy trial.  The

18   government requests an evidentiary hearing on this motion, because much of the evidence in this

19   memoranda concerns records currently in the custody of the DEA in Manila.

20                              THE FACTS

21        Defendant is one of the subjects of a long-term DEA OCDETF investigation, Operation

22   One-Pass.  It involved the smuggling of ice aboard the Manila-Guam flights, which arrive at 4:30

23   a.m. daily.  Mario Mercader, defendant and others paid couriers to carry the ice into Guam and

24   conceal it in the seats or lavatories of the aircraft.  Employees of the LSG night crew would board

25   the plane for servicing and remove the ice, as directed.  This group brought multi-kilos into

26   Guam before the operation was shut down.  Mercader and Fuller had originally resided on Guam.

27

28                                  -1-

1    By 1998, however, the DEA and Guam Customs had begun to intercept the loads of ice found on

2    the planes, and substitute sham. The agencies had also started arresting LSG employees, who

3    pled guilty and began working undercover for the DEA. By 1998, Mercader had moved to the

4    Philippines permanently. Although he continued to direct his operation from there, he was

5    careful never to leave the Philippines again. Fuller also moved to the Philippines. When Roland

6    Mora was arrested in May, 1999, he made a consensually monitored call to Fuller's cell phone in

7    the Philippines, 639-18-875-7523. During their conversation he asked when she would be

8    coming to Guam again, but her answer was vague, that she would be coming to Guam on a

9    "touch and go" basis. On May 3, 1999, Fuller told him that a load was coming in the next day,

10   and would be hidden in seat 7-A. On May 4, Richard Gonzales called Mora to advise him the

11   load was in seat 6-A. DEA agents ultimately found four packages of ice hidden in 6F and

12   substituted sham for the ice. Later Mora told Gonzales he had retrieved the load and they

13   arranged for Mora to deliver it to him at Ypao Park. Gonzales was arrested after he took delivery

14   of the packages, and also ultimately pled guilty. Defendant never contacted Mora again.

15        The DEA, through an independent investigation, established that Cynthia Sulpacio was

16   dealing ice, and executed a search warrant on her residence May 14, 1999. Sulpacio confessed

17   and said her source was Fuller, with whom she had been dealing since 1997. At that time Fuller

18   lived on Guam, and would travel to the Philippines for ice every two months. By January, 1999,

19   however, Fuller had moved permanently to the Philippines and began shipping ice to Sulpacio

20   via courier. A "Roland" had delivered 12 packages to her in January, 1999. Sulpacio said that

21   earlier on the day of the search warrant, Fuller had telephoned her from the Philippines to ask if

22   anyone had called her. That was their agreed-upon signal that another load of ice was being

23   shipped. On May 14, acting at the direction of the DEA, Sulpacio called Fuller at her cell phone,

24   63-918-875-7523, and told her no one had paged her yet. Fuller said that she was worried that

25   "Stac" had been detained, that Fuller had called his sister, who said he was "at detention."

26   Sulpacio was never able to contact Fuller again.

27

28                                          -2-

Defendant was indicted July 28, 2001. The DEA sent a Form 202 to the U.S. Marshal's Service to enter her personal data in NCIC. A copy of the DEA 202 is attached as Exhibit 1. It reflects that her address was 760 East Pantaleon Street, Hulo, Manila..

Because she is a U.S. citizen, and was believed to be in the Philippines, this office requested that her passport be revoked, and that the Philippine State Department be notified accordingly. AUSA Mikel Schwab faxed a request to revoke defendant's passport to DOJ's Office of International Affairs (OIA) on September 11, 2001. He enclosed the pertinent data on defendant (and her co-defendant Espinosa, also believed to be in the Philippines), which memo is attached hereto as Exhibit 2.. In response, on August 2, 2002, the OIA requested that the U.S. Passport Office revoke defendant's passport (Exhibit 3). As well, OIA requested that the U.S. State Department send a cable to the U.S. Embassy in Manila, advising that her passport had been revoked (Exhibit 4). This cable was sent on August 2, 2002, and advised the Embassy that defendant's passport was being revoked, and asking the Embassy to advise Philippine authorities that she was in the country without a valid travel document (Exhibits 5 and 6).

Special Agent Rodel R. Babasa is presently the DEA legate in Manila. He will testify that the DEA's actions to locate Fuller began soon after her arrest. Accordingly to his file, the DEA sent S/A Jeffrey Wendling, who was at the Embassy then, a copy of its Form 202. On September 6, 2001, Wendling formally requested the Philippine National Police (PNP) to locate defendant. In addition to notifying the PNP, Wendling wrote a letter to the Commissioner of the Philippine Bureau of Immigration, also requesting assistance in locating defendant.

S/A Babasa has provided some of the documents in the DEA's official file. Exhibit 7 is a copy of theAugust, 2002, Embassy letter sent to defendant concerning her passport and warrant. It was given to the FBI legate with instructions to request Philippine Bureau of Immigration officials to serve it. S/A Babasa will testify that the DEA Manila Country Office made inquiries of the Philippine police on several occasions: January 8, 2003; March 27, 2003; August 25, 2003; November 25, 2003; October 8, 2004; January 6, 2005; and May 16, 2005. She was finally

-3-

1    arrested by the PNP August 10, 2005.

2         Exhibit 8 is a copy of a DEA memo S/A Wendling sent to his regional director, updating

3    the status of Fuller's case. It reflects that the Philippine police were trying to locate her, that they

4    had learned she had moved, and that they contacted a relative, who agreed to advise her that

5    immigration authorities wanted to meet with her. Exhibit 9 is another status update, reflecting

6    that, according to the the Intelligence Division of the Philippine Bureau of Immigration, Fuller

7    had appeared briefly at the Pantaleon Street address, and that the house was under surveillance.

8    Hence, the record demonstrates that Philippine officials did attempt to locate the defendant but

9    were unsuccessful.

10                                           THE LAW

11        It is a given, of course, that United States agencies have no jurisdiction to act in other

12   countries. To accomplish anything in a foreign jurisdiction, their sole recourse is to request

13   action of their counterparts in that country.

14   A.  The Four Considerations Required by Barker.

15        Whether defendant's post-indictment right to speedy trial has been violated is determined

16   by four considerations, set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972 ) and involve a

17   balancing test between the "length of delay, the reason for the delay, the defendant's assertion of

18   his right, and prejudice to the defendant." Id. at 530. "Until there is some delay which is

19   presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the

20   balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay

21   that will provide such an inquiry is necessarily depending upon the peculiar circumstances of the

22   case." Id. The reason for delay is also important. "A deliberate attempt to delay the trial in

23   order to hamper the defense should be weighted heavily against the government. A more neutral

24   reason such as negligence or overcrowded courts should be weighted less heavily, ...." Id. at 531.

25    Prejudice "should be assessed in the light of the interests of defendant which the speedy trial

26   right was designed to protect. This Court has identified three such interests: (i) to prevent

27

28                                              -4-

oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.. *Id.* at 532. Finally, none of these four factors "is either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Under this standard, the defendant had the burden of showing actual prejudice to prove a violation of his post-indictment speedy trial rights.

Doggett v. United States, 505 U.S. 647 (1992) created a significant exception to this requirement. There, eight years passed between the time of the indictment and defendant's arrest. The delay was entirely the government's fault, and the defendant could not be faulted for not demanding his speedy trial rights, because he did not know he had been charged. The district court, however, had denied his motion to dismiss because he could not make any affirmative showing that the delay had prejudiced him.

The Court first noted that this delay was "presumptively prejudicial," thereby triggering a judicial examination of his claim. The length of delay is important, because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* at 652. In view of the inexcusable eight-year delay, the Court held that the defendant did not have to demonstrate prejudice, but rather it would be presumed, and the government would have to "persuasively" rebut it. *Id.* at 658.

B. The Delay In This Case Is Two Months.

A delay of as little as 13 months is presumptively prejudicial and triggers a Barker inquiry. United States v. Murillo, 288 F.3d 1126 (9th Cir. 2002). Even a six-month delay presents a "borderline case." United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986). This is not the situation here, however.

The length of delay by the United States was little more than two months, from the time of the indictment, June 28, 2001, until the Philippine authorities were notified September 6, 2001. Defendant took up residence in a foreign country, over which the United States has no

-5-

control. The DEA Manila Country Office requested that the Philippine National Police arrest her, and provided her last known address. It notified the Commissioner of the Philippine Bureau of Immigration, in case she attempted to get a Philippine passport. More, the United States could not do. After the State Department revoked her passport, the Embassy sent her a letter notifying her of the arrest warrant. The DEA Country Office in Manila regularly contacted its Philippine counterpart to confirm that Philippine officers were still attempting to find her.

Defendant predicates her motion on the premise that the five-year delay between her indictment and arrest was due to the failure of the government to act on the arrest warrant and attempt to arrest her. To the contrary, the evidence will show that the United States took every reasonable step to effect her capture. Hence, the presumptive prejudice required by Doggett is not applicable here. This issue should be analyzed under the four Barker factors.

Considering the first two, the length of delay was only two months. The reason for the five-year delay was not due to any lack of effort by the United States to arrest the defendant, but rather to the efforts of Philippine law enforcement, over which the United States has no control.

C. Defendant Waived Her Right to a Speedy Trial.

Defendant did not assert her right to speedy trial. The evidence indicates that she moved to the Philippines, and stayed there, because she knew her confederates were getting arrested and the authorities were closing in on her. After the State Department had revoked her passport, the U.S. Embassy notified her that there was a warrant out for her arrest. The totality of the evidence will indicate that defendant was aware of these charges. Her failure to come forward constitutes a waiver of her Speedy Trial rights.

In United States v. Aguirre, 994 F.2d 1454 (9th Cir. 1993), for example, the defendant was in England when he was advised a complaint had been filed against him in California. He obtained an affidavit from the Embassy asking for a continuance. But when he returned to California, he did not contact the authorities or make any inquiry into the status of the case. He moved to Arizona and was arrested five years later on an indictment. The district court found

-6-

1 that he knew of the charges against him and failed to answer them. The Ninth Circuit counted
2 this against him. "Aguirre could have, at any moment, ended the delay and avoided any
3 prejudice caused by the passage of time. He only had to get in touch with federal authorities and
4 tell them his whereabouts, as he promised to do. Failing to assert his speedy trial right, Aguirre's
5 inaction contributed to the delay; accordingly, he is entitled to no presumption of prejudice." *Id.*
6 at 1458. The court required Aguirre to actually show he had been prejudiced by the delay, which
7 he was unable to do.

8      The traditional factors to show prejudice are oppressive pretrial incarceration, anxiety and
9 concern of the accused, and the possibility that his defense will be impaired. Doggett, 505 U.S.
10 at 654. Here, there was no pretrial incarceration during this delay, and no evidence of anxiety or
11 concern. The sole prejudice defendant relies upon is that the passage of time necessarily dims
12 memories and makes witnesses more difficult to find. She does not allege, however, any
13 specifics, such as the names of witnesses she thinks are pertinent to her defense and her attempts
14 to locate them.

15      From the government's perspective, there are no witnesses who cannot be located. With
16 the exception of Mario Mercader, all defendant's cohorts have been prosecuted and sentenced,
17 and are either in federal penitentiaries or on supervised release to the U.S. Probation Office. The
18 government has all its evidence.

19      For the reasons stated above, defendant's motion should be denied.

20      Respectfully submitted this __10th__ day of January, 2006.

21                               LEONARDO M. RAPADAS
                               United States Attorney
22                                Districts of Guam and CNMI

23

By:     

24                                KARON V. JOHNSON
                               Assistant U.S. Attorney
25
26
27
28                        -7-

# PERSONAL HISTORY REPORT

| 1. File Title | 2. File Number | 3. Program Code |
|---|---|---|
| | RB-97-0004 | |
| MERCERDER, Mario F. et.al. | 4. Group No. | 5. G-DEP ID | 6. Date Prepared |
| | 5 | XNA3I | 09-07-2005 |

**7. PURPOSE OF SUBMISSION:** [X] G-DEP DESCRIPTION [X] ARREST [ ] FUGITIVE DECLARATION [X] FUGITIVE CANCELLATION

| 8. Subject Name (Last, First, Middle) | 8a. Arrest No. | 9. Qualitative Characterization | 10. Date of Birth (MM-DD-YYYY) |
|---|---|---|---|
| FULLER, Edita Ilang | 2005RB1652 | AC | 06-06-1950 |
| 11a. Alias Name | | 11b. Priority Target | 12. Alternate Date of Birth |
| Editha FULLER | | [ ] YES [x] NO | |

| 13. NADDIS No. | 14. FBI No. | 15. Social Security No. | 16. Misc. Numbers (e.g., TECS; DRUG-X; Registrant; CSS No., etc.) |
|---|---|---|---|
| 4655555 | Pending | 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 | |

| 17. Place of Birth (City, State/Country) | 18. Citizenship (Country) | 19. Alien Status |
|---|---|---|
| Philippine Islands | United States | [ ] Illegal [ ] Legal (Alien Registration No.) |

| 20. Race | 21. Ethnicity | 22. Sex | 23. Color Hair | 24. Height |
|---|---|---|---|---|
| [ ] Black  [x] Asian-Pacific Islander  [ ] White  [ ] Native American  [ ] Unknown | [ ] Hispanic  [x] Non-Hispanic  [ ] Unknown | [ ] Male  [x] Female | Black | 5 ' 04 " |
| | | | 25. Color Eyes | 26. Weight |
| | | | Brown | 150 lbs. |

| 27. Address (No., Street, Unit, City, State/Country, Zip Code) | 28. Identifying Characteristics (Scars, tattoos, marks, physical defects, etc.) |
|---|---|
| 760 East Pantaleon St. Hulo, Manila Philippine Isl. FORMERLY: 169 Redondo Catan, Dededo, Guam | N/A |

| 29. Telephone Number (Include Area Code) 671-637-3271 |
|---|

| 30. Occupation | 31. Employer Name and Address |
|---|---|
| Unemployed | N/A |
| | 32. Employer Telephone Number (Include Area Code) N/A |

| 33. Passport No. | 34. Issue Date | 35. Issuing Country | 36. Expiration Date | 37. Name on Passport |
|---|---|---|---|---|
| 1203032908US | 04-07-1994 | United States | 04-06-2004 | FULLER, Edita Ilang |
| 38. Driver's License No. | 39. Issuing State/Country | 40. Expiration Date | 41. Name on License |
| 1554518007 | Guam | | FULLER, Edita I. |

| 42a. FAMILY INFORMATION (Last, First, Middle Name) | b. Age | c. Address (No. Street, Unit, City, State/Country) & Phone No. |
|---|---|---|
| Father | | |
| UNKNOWN | | |
| Mother | | |
| UNKNOWN | | |
| [x] Spouse [ ] Companion [ ] Paramour | | UNKNOWN |
| MERCADER, Mario F. (FORMER HUSBAND) | | |
| Children | | |
| None | | |
| | | |
| | | |
| Other Relatives (Relationship) | | |

| 43a. Source of Supply (Name) | 44a. Criminal Associates (Use Remarks Section to Add Other Names) | 44b. NADDIS Nos. |
|---|---|---|
| MERCADER, Mario F. | MERCADER, Mario F. | 4089593 |
| 43b. NADDIS No. | DEGUZMAN, Roland A. | 4665573 |
| 4089593 | | |

## I. G-DEP DESCRIPTION (Complete for all G-DEP and Arrest Submissions.) Agents Manual 622

| 45. Submission: | 46. Subject's Principal Controlled Substance / Commodity |
|---|---|
| [x] Initial  [ ] Supplemental | Use Letter-Number Code: A3 (See Agents Manual) |

FORM DEA-202 (3-04) *Previous editions are obsolete*

*EXHIBIT 1*

Electronic Form Version Designed in JetForm 5.2 Version

# Memo

**To:** Lee Cox, OIA
**From:** Mikel W. Schwab, AUSA
**Date:** 11September01
**Subject:** Passport revocations for Ruperto A. Espinosa and
      Editha I. Fuller.

I have forwarded, via facsimile, the Indictments, and Warrants for Arrest for Ruperto A. Espinosa and Editha I. Fuller.   These are both U.S. citizens now in the Philippines.  I will be meeting with the prosecuting attorney, AUSA Karen Johnson and the case agent to learn more about the **exact** location for the two defendants and to get the name and contact information for the US Agent we are working with in Manila.  I will also collect the dates of birth and other identifying information.

We are requesting a passport revocation for both defendants.  They are both U.S. citizens in the Philippines using U.S. passports.

The third defendant in this case, Mario F. Mercader, is a citizen of the Philippines.   We will complete a full extradition package on that defendant at a later time.

Thank you for all the time and attention you give to our District.

cc: Karon Johnson, AUSA

# United States District Court

DISTRICT OF **Guam**

UNITED STATES OF AMERICA

V.

**EDITHA I. FULLER**

# WARRANT FOR ARREST

CASE NUMBER: **CR-01-00063-002**

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ **EDITHA I. FULLER**
                                                                                    *Name*

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☑ Indictment  ☐ Information  ☐ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with    (brief description of offense)

**21:963 - CONSPIRACY TO IMPORT  METHAMPHETAMINE HYDROCHLORIDE (COUNT 1)**
**21:846 - CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE (COUNT 2)**
**21:952 - IMPORTATION OF METHAMPHETAMINE HYDROCHLORIDE (COUNT 3)**

In violation of Title _____ United States Code, Section(s) _____

**MARILYN B. ALCON**

Name of Issuing Officer

*Marilyn B. Alcon*
Signature of Issuing Officer

**Deputy Clerk**
Title of Issuing Officer

**June 28, 2001; Hagatna, Guam**
Date and Location

Ball fixed at $ **NO BAIL** _____ by _____

**HONORABLE JOHN S. UNPINGCO**
Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at_____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

COPY

# United States District Court

DISTRICT OF _____Guam_____

| | |
|---|---|
| UNITED STATES OF AMERICA | **WARRANT FOR ARREST** |
| **V.** | |
| RUPERTO A. ESPINOSA, JR. | CASE NUMBER: CR-01-00063-003 |

To:  The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ____RUPERTO A. ESPINOSA, JR.____
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☑ Indictment  ☐ Information  ☐ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with  (brief description of offense)

**21:963 - CONSPIRACY TO IMPORT METHAMPHETAMINE HYDROCHLORIDE (COUNT 1)**
**21:846 - CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE (COUNT 2)**
**21:952 - IMPORTATION OF METHAMPHETAMINE HYDROCHLORIDE (COUNT 4)**
**21:841(a)(1) - DISTRIBUTION OF METHEMPHETAMINE HYDROCHLORIDE (COUNT 5)**

In violation of Title _____ United States Code, Section(s) _____

| | |
|---|---|
| **MARILYN B. ALCON** | **Deputy Clerk** |
| Name of Issuing Officer | Title of Issuing Officer |
| *Marilyn B. Alcon* | **June 28, 2001; Hagatna, Guam** |
| Signature of Issuing Officer | Date and Location |

Ball fixed at $  **NO BAIL**      by  **HONORABLE JOHN S. UNPINGCO**
                                    Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION
OFFICE OF INTERNATIONAL AFFAIRS
TEAM 4

Telephone Number:    (202) 514-0015
Facsimile Number:    (202) 514-0080

## FACSIMILE TRANSMISSION

DATE:    August 2, 2002

TO:    Sharon Palmer-Royston
       Acting Director
       Passport Office
       Fax 202-663-2654

       Michel Guilani, L/LEI
       Fax: 202-647-4802

FROM:    Kyle D. Latimer, Senior Trial Attorney, and
         Lee Cox, Supervisory Paralegal

SUBJECT:    Passport Revocation Requests - **United States
            Citizen Editha Ilang FULLER and Naturalized United
            States Citizen Ruperto A. ESPINOSA, Jr.** from the
            Republic of the Philippines

The United States Attorney's Office for the District of Guam
and the Drug Enforcement Administration (DEA) have requested our
assistance in effecting the revocation of the passport privileges
of United States citizens felon fugitives Editha Ilang FULLER and
Ruperto A. ESPINOSA pursuant to 22 CFR §§ 51.70(a)(1) and
51.72(a) in order to secure their deportation from the
Philippines.

FULLER and ESPINOSA are wanted to stand trial in the United
States District Court for the District of GUAM on drug related
charges.  They are the subjects of Indictment Number 01-00063,
filed on June 28, 2001, in the United States District Court for
the District of Guam, charging them with the following offenses:

**Editha Ilang FULLER**

1) one count of conspiracy to import methamphetamine
hydrochloride (ice), in violation of 21 U.S.C. §§ 952(a), 960 and
963;

2) one count of conspiracy to distribute methamphetamine
hydrochloride (ice), in violation of 21 U.S.C. §§ 841(a)(1) and

846; and

3) one count of importation of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 952.

**Ruperto A. ESPINOSA, Jr.**

1) one count of conspiracy to import methamphetamine hydrochloride (ice), in violation of 21 U.S.C. §§ 952(a), 960 and 963;

2) one count of conspiracy to distribute methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 841(a)(1) and 846;

3) one count of importation of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 952; and

4) one count of distribution of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 841 (a)(1).

On June 28, 2001, warrants for FULLER and ESPINOSA's arrest were ordered issued by a judge of the United States District Court in the District of Guam, and issued by the Clerk of the above court.

Facts: Beginning in early 1995 and continuing through November 1997, FULLER, ESPINOSA, and others devised a scheme whereby they could import methamphetamine hydrochloride (ice) from the Philippines into Guam on board flights, undetected, from Manila. FULLER, a girlfriend of one of the co-defendants, would meet the couriers at the airport and take them to a hotel. FULLER and her boyfriend would provide the couriers with packages of ice, which they would carry abroad the aircraft when they returned to Guam, by hiding the packages in their shoes, seats or lavatories of the aircraft. After the aircraft landed in Guam, the couriers would exit, leaving the ice behind. Employees of the airlines, who had been recruited by FULLER's boyfriend, and who worked the graveyard shift for the airlines, would unload the ice which the couriers had hidden on the aircraft. ESPINOSA acted as a courier, and later made distribution of the ice after its arrival in Guam.

Editha Ilang FULLER is a United States citizen, born on June 6, 1950, in the Philippines. She is described as an Asian female, 5'4" tall, weighing 150 pounds, with black hair and brown eyes. FULLER possesses U.S. passport numbers 120303290, issued on April 7, 1994. Her social security number is 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.

Ruperto A. ESPINOSA, JR. is a naturalized United States citizen, born on January 28, 1957, in the Philippines. He is described as an Asian male, 5'3" tall, weighing 140 pounds, with black hair and brown eyes. ESPINOSA possesses U.S. passport number 120239202, issued March 12, 1993. His social security number is 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. He possesses a driver's license from Guam, number 1586-64-2759.

FULLER and ESPINOSA are believed to be residing in the Philippines. Further information regarding the whereabouts and identity of the fugitives can be obtained from Drug Enforcement Administration Country Attache Jeffrey L. Wendling or Special Agent Mark Connell, telephone number 632-523-1219.

Thank you in advance for your assistance.


TOTAL NUMBER OF PAGES (INCLUDING THIS ONE): 9

cc:  Jeffrey Wendling
     DEA Country Attache
     Fax: 9-011-632-522-1520

     AUSA Karon Johnson
     USAO/District of Guam
     Fax: 671-472-7334

     SA Joseph Meno
     DEA - Guam
     Fax: 671-472-7426

     Dale Price
     USMS
     Fax: 202-353-8325

*Washington, D.C. 20530*

MEW:EBG:KDL:LFC
95-100-13577

August 2, 2002

<u>BY E-MAIL</u>

Linda Jacobson , Esq.
Assistant Legal Adviser
Office of the Legal Adviser
Law Enforcement and Intelligence
Department of State
2201 C Street, N.W.
Room 5419
Washington, D.C. 20520-6310

    Attn: Tom Heinemann, Esq. and Michel Guilani

Dear Ms. Jacobson:

    Re: <u>United States Request for the Deportation of</u>
         <u>United States Citizen Editha Ilang FULLER and</u>
         <u>Naturalized United States Citizen Ruperto A. ESPINOSA,</u>
         <u>Jr. from the Republic of the Philippines</u>

    The Office of International Affairs asks that the Department
of State send a cable along the following lines to the U.S.
Embassy in Manila regarding the above-referenced request for
deportations.

BEGIN TEXT

1.   <u>FUGITIVE NAME/WHEREABOUTS/STATUS:</u>

    At the instance of the U.S. Department of Justice (DOJ),
Embassy is asked to request the deportations of United States
citizens Editha Ilang FULLER and Ruperto A. ESPINOSA, Jr. who
are currently believed to be living in the Philippines. Further
information regarding the whereabouts and identity of the
fugitive can be obtained from Drug Enforcement Administration
Attache Jeffrey L. Wendling or Special Agent Mark Connell,

Records
Chron
File
Attorney

*EXHIBIT 4*

telephone number 632-523-1219.

2. <u>CHARGING DOCUMENT/JURISDICTION/OFFENSE/WARRANT:</u>

FULLER and ESPINOSA are wanted to stand trial in the United States District Court for the District of Guam on drug related charges. They are the subjects of Indictment Number 01-00063, filed on June 28, 2001, in the United States District Court for the District of Guam, charging them with the following offenses:

**Editha Ilang FULLER**

1) one count of conspiracy to import methamphetamine hydrochloride (ice), in violation of 21 U.S.C. §§ 952(a), 960 and 963;

2) one count of conspiracy to distribute methamphetamine hydrochloride (ice), in violation of 21 U.S.C. §§ 841(a)(1) and 846; and

3) one count of importation of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 952.

**Ruperto A. ESPINOSA, Jr.**

1) one count of conspiracy to import methamphetamine hydrochloride (ice), in violation of 21 U.S.C. §§ 952(a), 960 and 963;

2) one count of conspiracy to distribute methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 841(a)(1) and 846;

3) one count of importation of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 952; and

4) one count of distribution of methamphetamine hydrochloride (ice), in violation of 21 U.S.C. § 841(a)(1).

On June 28, 2001, warrants for FULLER and ESPINOSA's arrests were ordered issued by a judge of the United States District Court in the District of Guam, and issued by the Clerk of the above court.

3. <u>FACTS OF THE CASE:</u>

Beginning in early 1995 and continuing through November 1997, FULLER, ESPINOSA, and others devised a scheme whereby they

2

could import methamphetamine hydrochloride (ice) from the Philippines into Guam on board flights, undetected, from Manila. FULLER, a girlfriend of one of the co-defendants, would meet the couriers at the airport and take them to a hotel. FULLER and her co-defendant boyfriend would provide the couriers with packages of ice, which they would carry abroad the aircraft when they returned to Guam, by hiding the packages in their shoes, seats or lavatories of the aircraft. After the aircraft landed in Guam, the couriers would exit, leaving the ice behind. Employees of the airlines who had been recruited by Fuller's boyfriend, and who worked the graveyard shift for the airlines, would unload the ice which the couriers had hidden on the aircraft. ESPINOSA acted as a courier, and later made distribution of the ice after its arrival in Guam.

4. PHYSICAL DESCRIPTION/IDENTIFICATION DATA:

EDITHA Ilang FULLER is a United States citizen, born on June 6, 1950, in the Philippines. She is described as an Asian female, 5'4" tall, weighing 150 pounds, with black hair and brown eyes. Her U.S. passport number is 120303290, issued on April 7, 1994. Her social security number is 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.

RUPERTO A. ESPINOSA, JR. is a naturalized United States citizen, born on January 28, 1957, in the Philippines. He is described as an Asian male, 5'3" tall, weighting 140 pounds, with black hair and brown eyes. His U.S. passport number is 120239202, issued on March 12, 1993. His social security number is 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.

END TEXT

Thank you for your assistance.

Sincerely,

Mary Ellen Warlow
Director
Office of International Affairs
Criminal Division

By:

Kyle D. Latimer
Senior Trial Attorney

3

```
***************************
* U N C L A S S I F I E D *
***************************
```

OTTUZYUW RUEHCAA8460 2142134-UUUU--RUEAWJA.
ZNR UUUUU ZZH
O P 022128Z AUG 02
FM SECSTATE WASHDC
TO RUEHML/AMEMBASSY MANILA IMMEDIATE 4121
INFO RUEAWJA/ DEPT OF JUSTICE WASHDC PRIORITY
RUEHNA/DEA WASHDC 5610
BT
UNCLAS SECTION 01 OF 02 STATE 148460
POST FOR CONGEN, FBI LEGAT
E.O. 12958: N/A
TAGS: CJAN, CASC, CPAS, SNAR, KCRM, RP, JA
SUBJECT: RETURN OF AMCIT FELON FUGITIVES ▓▓▓▓▓▓▓▓▓
▓▓▓▓▓ AND RUPERTO A. ESPINOSA, JR.
1.  AT THE REQUEST OF THE U.S. DEPARTMENT OF JUSTICE OFFICE
OF INTERNATIONAL AFFAIRS (DOJ), DEPARTMENT REQUESTS
ASSISTANCE IN EFFECTING THE RETURN OF UNITED STATES CITIZENS
EDITHA ILANG FULLER AND RUPERTO A. ESPINOSA, JR., WHO ARE
CURRENTLY BELIEVED TO BE LIVING IN THE PHILIPPINES.  FURTHER
INFORMATION REGARDING THE WHEREABOUTS AND IDENTITY OF THE
FUGITIVE CAN BE OBTAINED FROM DRUG ENFORCEMENT ADMINISTRATION
ATTACHE JEFFREY L. WENDLING OR SPECIAL AGENT MARK
2.  FULLER AND ESPINOSA ARE WANTED TO STAND TRIAL ON
DRUG-RELATED CHARGES.  THEY ARE THE SUBJECTS OF INDICTMENT
NUMBER 01-00063, FILED ON JUNE 28, 2001, IN THE U.S. DISTRICT
COURT FOR THE DISTRICT OF GUAM, CHARGING THEM WITH THE
FOLLOWING OFFENSES:
EDITHA ILANG FULLER
1) ONE COUNT OF CONSPIRACY TO IMPORT METHAMPHETAMINE
HYDROCHLORIDE (ICE), IN VIOLATION OF 21 U.S.C. 952(A), 960
AND 963;
2) ONE COUNT OF CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE
HYDROCHLORIDE (ICE), IN VIOLATION OF 21 U.S.C. 841(A)(1) AND
846; AND
3) ONE COUNT OF IMPORTATION OF METHAMPHETAMINE HYDROCHLORIDE
(ICE), IN VIOLATION OF 21 U.S.C. 952.
RUPERTO A. ESPINOSA, JR.
1) ONE COUNT OF CONSPIRACY TO IMPORT METHAMPHETAMINE
HYDROCHLORIDE (ICE), IN VIOLATION OF 21 U.S.C. 952(A), 960
AND 963;
2) ONE COUNT OF CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE
HYDROCHLORIDE (ICE), IN VIOLATION OF 21 U.S.C. 841(A)(1) AND
846;
3) ONE COUNT OF IMPORTATION OF METHAMPHETAMINE HYDROCHLORIDE
(ICE), IN VIOLATION OF 21 U.S.C. 952; AND
4) ONE COUNT OF DISTRIBUTION OF METHAMPHETAMINE HYDROCHLORIDE
(ICE), IN VIOLATION OF 21 U.S.C. 841(A)(1).
    ON JUNE 28, 2001, WARRANTS FOR FULLER AND ESPINOSA'S
ARRESTS WERE ISSUED BY ORDER OF THE ABOVE COURT.
3.  THE FACTS OF THE CASE INDICATE THAT, BEGINNING IN EARLY
1995 AND CONTINUING THROUGH NOVEMBER 1997, FULLER, ESPINOSA,
AND OTHERS DEVISED A SCHEME WHEREBY THEY COULD IMPORT
METHAMPHETAMINE HYDROCHLORIDE (ICE) FROM THE PHILIPPINES INTO
GUAM ON BOARD FLIGHTS, UNDETECTED, FROM MANILA.  FULLER, A
```

```
***************************
* U N C L A S S I F I E D *
***************************
```

GIRLFRIEND OF ONE OF THE CO-DEFENDANTS, WOULD MEET THE COURIERS AT THE AIRPORT AND TAKE THEM TO A HOTEL. FULLER AND HER CO-DEFENDANT BOYFRIEND WOULD PROVIDE THE COURIERS WITH PACKAGES OF ICE, WHICH THEY WOULD CARRY ABROAD THE AIRCRAFT WHEN THEY RETURNED TO GUAM, BY HIDING THE PACKAGES IN THEIR SHOES, SEATS OR LAVATORIES OF THE AIRCRAFT. AFTER THE AIRCRAFT LANDED IN GUAM, THE COURIERS WOULD EXIT, LEAVING THE ICE BEHIND. EMPLOYEES OF THE AIRLINES WHO HAD BEEN RECRUITED BY FULLER'S BOYFRIEND, AND WHO WORKED THE GRAVEYARD SHIFT FOR THE AIRLINES, WOULD UNLOAD THE ICE THAT THE COURIERS HAD HIDDEN ON THE AIRCRAFT. ESPINOSA ACTED AS A COURIER, AND LATER DISTRIBUTED THE ICE AFTER ITS ARRIVAL IN GUAM.

4. EDITHA ILANG FULLER IS A UNITED STATES CITIZEN, BORN ON JUNE 6, 1950, IN THE PHILIPPINES. SHE IS DESCRIBED AS AN ASIAN FEMALE, 5 FEET 4 INCHES TALL, WEIGHING 150 POUNDS, WITH BLACK HAIR AND BROWN EYES. HER U.S. PASSPORT NUMBER IS 120303290, ISSUED ON APRIL 7, 1994. HER SOCIAL SECURITY NUMBER IS 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.

RUPERTO A. ESPINOSA, JR. IS A NATURALIZED UNITED STATES CITIZEN, BORN ON JANUARY 28, 1957, IN THE PHILIPPINES. HE IS DESCRIBED AS AN ASIAN MALE, 5 FEET 3 INCHES TALL, WEIGHTING 140 POUNDS, WITH BLACK HAIR AND BROWN EYES. HIS U.S. PASSPORT NUMBER IS 120239202, ISSUED ON MARCH 12, 1993. HIS SOCIAL SECURITY NUMBER IS 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.

5. FULLER'S AND ESPINOSA'S PASSPORT ARE BEING REVOKED AT THE REQUEST OF DOJ AND INSTRUCTIONS WILL BE SENT BY CA/PPT/PAS BY SEPTEL. EMBASSY IS ASKED TO APPROACH THE PHILIPPINE AUTHORITIES AND INFORM THEM THAT FULLER AND ESPINOSA, AMCIT FELON FUGITIVES FROM U.S. JUSTICE (CITE ABOVE OFFENSES) ARE

SECTION 2 of 2
FULLER AND RUPERTO A. ESPINOSA, JR.
IN THE PHILIPPINES WITHOUT A VALID TRAVEL DOCUMENT. THEIR U.S. PASSPORTS HAVE BEEN REVOKED, ALTHOUGH THEY STILL MAY BE IN THEIR POSSESSION. ALSO INFORM THE PHILIPPINE AUTHORITIES THAT BECAUSE OF THE SERIOUSNESS OF THE CHARGES AGAINST FULLER AND ESPINOSA, THE U.S. GOVERNMENT WOULD WELCOME THEIR APPREHENSION AND DETENTION, AND ANY ASSISTANCE PHILIPPINE AUTHORITIES MAY BE ABLE TO PROVIDE IN THEIR RETURN TO THE UNITED STATES.

6. IF THIS PROPOSAL IS ACCEPTABLE TO PHILIPPINE AUTHORITIES AND FULLER AND ESPINOSA IS APPREHENDED, WE WOULD REQUEST THEIR ASSISTANCE IN DETAINING THEM FOR THE BRIEF TIME IT WILL TAKE TO GET U.S. MARSHALS TO THE PHILIPPINES, AND TO ASSIST IN PLACING THEM ABOARD A FLIGHT TO THE UNITED STATES IN THE COMPANY OF U.S. MARSHALS.

7. IN MAKING ABOVE APPROACH EMBASSY SHOULD MAKE CLEAR TO PHILIPPINE AUTHORITIES THAT WHILE WE WOULD APPRECIATE THEIR ASSISTANCE IN RETURNING FULLER AND ESPINOSA, BECAUSE OF LIMITATIONS IMPOSED BY U.S. LAW, WE WOULD NOT BE IN A POSITION TO GUARANTEE RECIPROCITY IN THE EVENT OF PHILIPPINE INTEREST IN RETURNING SOMEONE TO THE PHILIPPINES IN A SIMILAR MANNER.

8. PLEASE FAX DEPARTMENT (FOR M. GUILANI, L/LEI, (202-647-4802) A COPY OF EMBASSY'S NOTE. PLEASE KEEP US

```
***************************
* U N C L A S S I F I E D *
***************************
```

INFORMED OF DEVELOPMENTS, SLUGGING CABLES FOR L/LEI-T.
HEINEMANN OR M. GUILANI AND DOJ/OIA-K. LATIMER.  EMBASSY'S
ASSISTANCE IS APPRECIATED.
POWELL

NNNN

```
***************************
* U N C L A S S I F I E D *
***************************
```

ℓℓⳙ

OTTUZYUW RUEHCAA8236 2312006-UUUU--RUEAWJA.
ZNR UUUUU ZZH
O 191959Z AUG 02
FM SECSTATE WASHDC
TO AMEMBASSY MANILA IMMEDIATE 0000
BT
UNCLAS STATE 158236
FOR CONGEN AND LEGATT
E.O. 12958: N/A
TAGS: CJAN, CASC, CPAS, (FULLER, EDITA ILANG)
SUBJECT: ██████████████ EDITA ILANG FULLER
1. POST'S ASSISTANCE IS REQUESTED IN THE REVOCATION OF
UNITED STATES PASSPORT NUMBER 120303290 ISSUED APRIL 07,
1994 AT THE HONOLULU PASSPORT AGENCY AT HONOLULU, HAWAII,
TO EDITA ILANG FULLER, DPOB: 06/06/50-PHILIPPINES. THE
REVOCATION INCLUDES ANY/ALL VALID OR POTENTIALLY VALID U.S.
PASSPORTS ISSUED TO SUBJECT IN THAT IDENTITY OR ANY OTHER
IDENTITY. THIS ACTION IS TAKEN UNDER SECTIONS 51.70 (A)(1)
AND (2), AND 51.72 (A) OF TITLE 22 OF THE CODE OF FEDERAL
REGULATIONS.
2. THE DEPARTMENT'S ACTION IS PREDICATED UPON EVIDENCE
THAT EDITA ILANG FULLER IS THE SUBJECT OF AN OUTSTANDING
FEDERAL WARRANT OF ARREST, ISSUED ON JUNE 28, 2001 BY THE
U.S DISTRICT COURT, AT HAGATNA, GUAM, CHARGING HER WITH
VIOLATING SECTIONS 963, 846, AND 952 OF TITLE 21 OF THE
UNITED STATES CODE.
3. MS. FULLER IS BELIEVED TO BE RESIDING IN THE
PHILIPPINES. FURTHER INFORMATION REGARDING HER WHEREABOUTS
AND IDENTITY CAN BE OBTAINED FROM THE DRUG ENFORCEMENT
ADMINISTRATION COUNTRY ATTACHE JEFFREY L. WENDLING OR
SPECIAL AGENT MARK CONNELL, TELEPHONE NUMBER 632-523-1219.
WHEN APPREHENDED, MS. FULLER SHOULD BE GIVEN A LETTER
INCORPORATING THE FOLLOWING LANGUAGE:
4. " THE DEPARTMENT OF STATE HAS REQUESTED THIS OFFICE TO
INFORM YOU THAT IT HAS REVOKED PASSPORT NUMBER 120303290
ISSUED TO YOU ON APRIL 07, 1994, AT THE HONOLULU PASSPORT
AGENCY AT HONOLULU, HAWAII, AND ANY OTHER U.S. PASSPORT YOU
MAY POSSESS, WHETHER ISSUED TO YOU IN YOUR TRUE IDENTITY OR
NOT, UNDER THE PROVISIONS OF SECTIONS 51.70 (A)(1) AND (2),
AND 51.72 (A) OF TITLE 22 OF THE CODE OF FEDERAL
REGULATIONS WHICH READ AS FOLLOWS:
"SECTION 51.70 - DENIAL OF PASSPORTS - (A) A PASSPORT,
EXCEPT FOR DIRECT RETURN TO THE UNITED STATES, SHALL NOT BE
ISSUED IN ANY CASE IN WHICH: (1) THE APPLICANT IS THE
SUBJECT OF AN OUTSTANDING FEDERAL WARRANT OF ARREST FOR A
FELONY, INCLUDING A WARRANT ISSUED UNDER THE FEDERAL
FUGITIVE ACT (18 U.S.C. 1073); (2) THE APPLICANT IS THE
SUBJECT OF A CRIMINAL COURT ORDER, CONDITION OF PROBATION,
OR CONDITION OF PAROLE, ANY OF WHICH FORBIDS DEPARTURE FROM
THE UNITED STATES AND THE VIOLATION OF WHICH COULD RESULT
IN THE ISSUANCE OF A FEDERAL WARRANT OF ARREST, INCLUDING A
WARRANT ISSUED UNDER THE FEDERAL FUGITIVE FELON ACT.
"SECTION 51.72 - REVOCATION OR RESTRICTION OF PASSPORTS - A
PASSPORT MAY BE REVOKED, RESTRICTED OR LIMITED WHERE: (A)

95-,00-13577          EXHIBIT 6

2

THE NATIONAL WOULD NOT BE ENTITLED TO ISSUANCE OF A NEW
PASSPORT UNDER SECTION 51.70 OR 51.71.
"THE DEPARTMENT'S ACTION IS PREDICATED UPON EVIDENCE THAT
YOU ARE THE SUBJECT OF A FEDERAL WARRANT OF ARREST ISSUED
ON JUNE 28, 2001 BY· THE U.S. DISTRICT COURT, AT HAGATNA,
GUAM, CHARGING YOU WITH VIOLATING SECTIONS 963, 846, AND
952 OF TITLE 21 OF THE UNITED STATES CODE.
"ANY FURTHER USE OF ANY U.S. PASSPORT ISSUED TO YOU WOULD
CONSTITUTE A VIOLATION OF SECTION 1544 OF TITLE 18 OF THE
UNITED STATES CODE, A FELONY.
"YOU ARE ADVISED OF YOUR RIGHT TO A HEARING UNDER SECTIONS
51.80 THROUGH 51.89 OF THE PASSPORT REGULATIONS, A COPY OF
WHICH IS ENCLOSED. IF YOU SHOULD DESIRE SUCH A HEARING,
YOU MUST NOTIFY THIS OFFICE WITHIN 60 DAYS AFTER RECEIPT OF
THIS NOTICE. HOWEVER, SUCH A HEARING WOULD BE LIMITED TO
DETERMINING WHETHER OR NOT YOU ARE THE SUBJECT OF THE
FEDERAL WARRANT AND IF THE APPROPRIATE PASSPORT REGULATIONS
WERE PROPERLY APPLIED. FURTHERMORE, YOU ARE ADVISED THAT A
REQUEST FOR A HEARING DOES NOT, REPEAT DOES NOT, SERVE TO
STAY THE REVOCATION ACTION TAKEN BY THE DEPARTMENT OF
STATE.
"THE REVOCATION OF THE PASSPORT (S) IN NO WAY AFFECTS YOUR
ELIGIBILITY TO BE DOCUMENTED FOR DIRECT AND IMMEDIATE
RETURN TO THE UNITED STATES.  SHOULD YOU DESIRE SUCH
DOCUMENTATION, PLEASE CONTACT THIS OFFICE."
5.  COPIES OF THE ABOVE CITED REGULATIONS, WHICH SHOULD
ACCOMPANY THIS LETTER, MAY BE MADE FROM THOSE APPEARING IN
7 FAM EXHIBIT 1311.1-4 (PAGES 10-11).
6.  THE ABOVE LANGUAGE MAY BE PROPERLY MODIFIED.
7. THE LETTER OF REVOCATION SHOULD BE HAND DELIVERED OR
SENT BY CERTIFIED MAIL AND A RETURN RECEIPT REQUESTED.
REGARDLESS OF METHOD OF DELIVERY, POST SHOULD CREATE A
MEMORANDUM OF RECORD SPECIFICALLY STATING THE DATE UPON
WHICH DELIVERY OF THE PASSPORT REVOCATION LETTER WAS MADE.
PLEASE PROVIDE COPY OF MEMORANDUM TO DEPARTMENT
CA/PT/PAS/LD, FAX NUMBER (202) 663-2654.
8. IN THE EVENT THE SUBJECT REQUESTS DOCUMENTATION FOR
RETURN TO THE UNITED STATES, A CARD OF IDENTITY OR A TRAVEL
LETTER SHOULD BE HANDED TO THE OFFICER IN CHARGE OF
RETURNING THE INDIVIDUAL TO THE U.S. WHEN NO LONGER
NEEDED, THE CARD OF IDENTITY OR TRAVEL LETTER SHOULD BE
RETURNED TO CA/PPT/PAS/LD.
9. POST SHOULD NOTIFY LOCAL LAW ENFORCEMENT AUTHORITIES OF
THE ADVERSE PASSPORT ACTION TAKEN BY THE DEPARTMENT IN THIS
MATTER.
10. IF MS. FULLER SHOULD REQUEST A HEARING, PLEASE NOTIFY
CA/PPT/PAS/LD AS SOON AS POSSIBLE SO WE CAN PROVIDE YOU
WITH A HEARING PACKAGE.
11. PLEASE KEEP DEPARTMENT (CA/PPT/PAS/LD) INFORMED OF
DEVELOPMENTS.
POWELL
BT
#8236
NNNN

2



*Embassy of the United States of America*

*Manila, Philippines*

August 20, 2002

Ms. Edita Ilang Fuller

Dear Ms. Fuller:

The Department of State has requested this office to inform you that it has revoked Passport Number 120303290 issued to you on April 7, 1994, at the Honolulu Passport Agency at Honolulu, Hawaii, and any other U.S. Passport you may possess, whether issued to you in your true identity or not, under the provisions of Sections 51.70 (A) (1) and (2), and 51.72 (A) of Title 22 of the Code of Federal Regulations which read as follows:

> "Section 51.70 - Denial of Passports - (A) A passport, except for direct return to the United States, shall not be issued in any case in which: (1) the applicant is the subject of an outstanding federal warrant of arrest for a felony, including a warrant issued under the Federal Fugitive Act (18 U.S.C. 1073); (2) the applicant is the subject of a criminal court order, condition of probation, or condition of parole, any of which forbids departure from the United States and the violation of which could result in the issuance of a federal warrant of arrest, including a warrant issued under the Federal Fugitive Felon Act."

> "Section 51.72 - Revocation or Restriction of Passports - A passport may be revoked, restricted or limited where: (A) the national would not be entitled to issuance of a new passport under Section 51.70 or 51.71."

The Department's action is predicated upon evidence that you are the subject of a federal warrant of arrest issued on June 28, 2001 by the U.S. District Court, at Hagatna, Guam, charging you with violating Sections 963, 846, and 952 of Title 21 of the United States Code.

Any further use of any U.S. Passport issued to you would constitute a violation of Section 1544 of Title 18 of the United States Code, a felony.

Rec'd 8/21/02
@ LEGAT

ENCL - 1                    EXHIBIT 7

-2-

You are advised of your right to a hearing under Sections 51.80 through 51.89 of the Passport Regulations, a copy of which is enclosed. If you should desire such a hearing, you must notify this office within 60 days after receipt of this notice. However, such a hearing would be limited to determining whether or not you are the subject of the federal warrant and if the appropriate passport regulations were properly applied. Furthermore, you are advised that a request for a hearing does not, repeat does not, serve to stay the revocation action taken by the Department of State.

The revocation of the Passport(s) in no way affects your eligibility to be documented for direct and immediate return to the United States. Should you desire such documentation, please contact this office.

Sincerely,

Theodore Allegra
Consul of the
United States of America

Enclosures:
As stated

DISTRIBUTION:

**MANILA 616** ACTION_____ /FILE/

YEA:_____

Printed By: Cynthia A Agra 02/03/2003 08:13:05 AM
Subject: WJ-98-0007/XEA3I: VALERIO, RICKY MASCARINA CCX: GFWJ-03-91B5/XEA3I: PHILIPPINES GFWJ-03-9086/XEA3I:
STIMULANTS GFWJ-91-8004/XEA3I: FUGITIVES IN THE

Cable Text:
```
UNCLAS E F T O     SENSITIVE NOFORN      MANILA 00616
CXMANSVR:
    ACTION: DEA
    INFO:    CHRON


DISSEMINATION: DEA
CHARGE: DEA


APPROVED: DEA: JLWENDLING
DRAFTED: DEA: MSCONNELL:MSC
CLEARED: NONE


VZCZCMLI538
RR RUEHBK RUEHHI RUEHKL RUEHGP RUEHGO RUEHKO
RUEHUL RUEHBY RUEHVN RUEHHK RUEHBJ RUEABND RUEABND RUNGCAF
RUEABND RUWGTCH RUEABNE RUEABND RUEAUSM RUEAWJA
DE RUEHML #0616 0310839
ZNY EEEEE ZZH
R 310839Z JAN 03
FM AMEMBASSY MANILA
TO RUEHBK/AMEMBASSY BANGKOK 7979
RUEHHI/AMEMBASSY HANOI 5388
RUEHKL/AMEMBASSY KUALA LUMPUR 6019
RUEHGP/AMEMBASSY SINGAPORE 6045
RUEHGO/AMEMBASSY RANGOON 2328
RUEHKO/AMEMBASSY TOKYO 9962
RUEHUL/AMEMBASSY SEOUL 9965
RUEHBY/AMEMBASSY CANBERRA 7209
RUEHVN/AMEMBASSY VIENTIANE 3711
RUEHHK/AMCONSUL HONG KONG 9341
RUEHBJ/AMEMBASSY BEIJING 2761
RUEABND/DEA WASHDC
RUEABND/DEA FIELD DIVISION//LOS ANGELES//
RUNGCAF/DEA GUAM ISLAND GU
RUEABND/DEA DISTRICT OFFICE//HONOLULU
RUWGTCH/JIATF WEST//DEA REP/J2//
RUEABNE/EPIC EL PASO TX
RUEABND/DEA SPECIAL OPERATIONS DIVISION//NEWINGTON VA//
RUEAUSM/US MARSHALS SERVICE WASHINGTON DC//INTERNATIONAL
OPERATIONS//
RUEAWJA/DOJ WASHDC//OIA//
BT
UNCLAS E F T O MANILA 000616
```

**UNCLASSIFIED**
**1**

ENCL-2                    EXHIBIT F

POSTS FOR DEA ONLY

DEA HQS FOR: OF; OFF/STAMM AND MOORIN; NIAE; DOD; DOE;
NIBE; ODOI; ODII/LATIMORE; SARI
FROM CA WENDLING
BANGKOK: FOR REGIONAL DIRECTOR SNIPES


SENSITIVE
NOFORN


E.O. 12958: N/A
TAGS: SNAR, RP
SUBJECT:   WJ-98-0007/XEA3I: VALERIO, RICKY MASCARINA
     CCX: GFWJ-03-9185/XEA3I: PHILIPPINES
          GFWJ-03-9086/XEA3I: STIMULANTS
          GFWJ-91-8004/XEA3I: FUGITIVES IN THE
                              PHILIPPINES


------------------------------------------------------------
REPORT RE: UPDATED INFORMATON ON FEDERAL FUGITIVE EDITA
ILANG FULLER.
------------------------------------------------------------


DETAILS:


1.  (SBU/NF)  On August  27,  2002,  the Manila  Country
Office (MCO) informed Commissioner Andrea Domingo, Chief
of the Philippine Bureau of Immigration (BI) that Edita
Ilang FULLER, an American citizen, is the subject of a
federal arrest warrant issued by the U.S. District Court
of Hagatna, Guam for crystal methamphetamine trafficking
and as a result, FULLER's U.S. passport has been revoked
by  the  U.S.  Department  of  State.   In view of  this
circumstance, the MCO has requested assistance from the
BI to locate and arrest FULLER for summary deportation.


2. (SBU/NF) On December 27, 2002, Immigration Agent Dante
Atienza informed the MCO that FULLER has transferred her
place of residence from Mandaluyong City, Metro Manila to
somewhere in the Pasig City, Metro Manila, Philippines
area.  Furthermore,  the  BI  has  contacted  a  distant
relative of FULLER who is a Barangay (district) official
in the Pasig City area.  The immigration agents told the
relative  of  FULLER  that  she  has  some  immigration
problems,  which  she  has  to  fix  with  the  Bureau  of
Immigration.   Subsequently,  the  relative  agreed  to

**UNCLASSIFIED**
**2**

contact FULLER an' try to convince her to me with the
immigration authorities. The MCO will notify the Guam
Resident Office (GRO) of any developments with regards to
FULLER.
INDEXING SECTION: (SBU/NF)


1. FULLER, Edita Ilang: NADDIS 4667748


Pursuant to section 6242.1 of the Agents Manual, this
cable will be utilized as a permanent record in lieu of
a DEA-6.  This cable was prepared by SA Mark S. Connell
and approved by CA Jeffrey L. Wendling of the Manila
Country Office.

RICCIARDONE
BT
#0616
NNNN

<u>End Cable Text</u>

Printed By: Cynthia A Agra  02/03/2003 08:13:05 AM

**UNCLASSIFIED**
**3**

DISTRIBUTION:

**MANILA 1058**

ACTION_____  FILE

INFO:_____

Printed By: Cynthia A Agra  02/27/2003 08:05:13 AM
Subject:  WJ-98-0007/XEA3I: VALERIO, RICKY MASCARINA CCX: GFWJ-91-8004/XEA3I: FUGITIVES IN THE PHILIPPINES
GFWJ-03-9185/XEA3I: PHILIPPINES

Cable Text:
UNCLAS E F T O    SENSITIVE NOFORN    MANILA 01058
CXMANSVR:
     ACTION: DEA
     INFO:   CHRON


DISSEMINATION: DEA
CHARGE: DEA


APPROVED: DEA: JLWENDLING
DRAFTED: DEA: MSCONNELL:MSC
CLEARED: NONE


VZCZCMLI848
RR RUEHBK RUEHHI RUEHKL RUEHGP RUEHGO RUEHKO
RUEHUL RUEHBY RUEHVN RUEHHK RUEHBJ RUEABND RUEABND RUNGCAF
RUEABND RUWGTCH RUEABNE RUEABND RUEAUSM RUEAWJA
DE RUEHML #1058 0570723
ZNY EEEEE ZZH
R 260723Z FEB 03
FM AMEMBASSY MANILA
TO RUEHBK/AMEMBASSY BANGKOK 8055
RUEHHI/AMEMBASSY HANOI 5415
RUEHKL/AMEMBASSY KUALA LUMPUR 6053
RUEHGP/AMEMBASSY SINGAPORE 6078
RUEHGO/AMEMBASSY RANGOON 2354
RUEHKO/AMEMBASSY TOKYO 0053
RUEHUL/AMEMBASSY SEOUL 0051
RUEHBY/AMEMBASSY CANBERRA 7301
RUEHVN/AMEMBASSY VIENTIANE 3737
RUEHHK/AMCONSUL HONG KONG 9411
RUEHBJ/AMEMBASSY BEIJING 2851
RUEABND/DEA WASHDC
RUEABND/DEA FIELD DIVISION//LOS ANGELES//
RUNGCAF/DEA GUAM ISLAND GU
RUEABND/DEA DISTRICT OFFICE//HONOLULU
RUWGTCH/JIATF WEST//DEA REP/J2//
RUEABNE/EPIC EL PASO TX
RUEABND/DEA SPECIAL OPERATIONS DIVISION//NEWINGTON VA//
RUEAUSM/US MARSHALS SERVICE WASHINGTON DC//INTERNATIONAL
OPERATIONS//
RUEAWJA/DOJ WASHDC//OIA//
BT
UNCLAS E F T O MANILA 001058

**UNCLASSIFIED**
1

ENCL-3                    EXHIBIT 9

POSTS FOR DEA ONLY

DEA HQS FOR: OF; OFF/STAMM AND MOORIN; NIAE; DOD; DOE;
NIBE; ODOI; ODII/LATIMORE; SARI
FROM CA WENDLING
BANGKOK: FOR REGIONAL DIRECTOR SNIPES


SENSITIVE
NOFORN


E.O. 12958: N/A
TAGS: SNAR, RP
SUBJECT:   WJ-98-0007/XEA3I: VALERIO, RICKY MASCARINA
     CCX: GFWJ-91-8004/XEA3I: FUGITIVES IN THE
                             PHILIPPINES
          GFWJ-03-9185/XEA3I: PHILIPPINES
          GFWJ-03-9086/XEA3I: STIMULANTS


-----------------------------------------------------------
REPORT RE: INFORMATION ON FEDERAL FUGITIVE EDITA ILANG
FULLER IN THE PHILIPPINES.
-----------------------------------------------------------


DETAILS:


1. (SBU/NF) On February 20, 2003, Immigration Agent Dante
Atienza of the Intelligence Division (ID) of the
Philippine Bureau of Immigration (BI) informed the Manila
Country Office (MCO) that they have located the residence
frequently visited by Edita Ilang FULLER, an American
citizen, who is the subject of a federal arrest warrant
issued by the U.S. District Court of Hagatna, Guam for
crystal methamphetamine trafficking.


2. (SBU/NF) FULLER has been under protracted surveillance
since August 2002.   FULLER had her hair cut short.
According to BI agents, FULLER was spotted visiting a
house on Pantaleon Street, Mandaluyong City, Metro
Manila, Philippines during the early hours of the morning
for a very brief time.  It was also noted that FULLER has
many relatives in the area, who are known to be involved
in the illegal drug trade.  The BI team rented out an
apartment room across the said residence to be used as a
stationary surveillance platform.  IA Atienza will inform
the MCO of any developments.

**UNCLASSIFIED**
**2**

INDEXING SECTION:

1. FULLER, Edita Ilang: NADDIS 4667748.
Pursuant to section 6242.1 of the Agents Manual, this
cable will be utilized as a permanent record in lieu of
a DEA-6.  This cable was prepared by SA Mark S. Connell
and approved by CA Jeffrey L. Wendling of the Manila
Country Office.


RICCIARDONE
BT
#1058
NNNN

**End Cable Text**

Printed By: Cynthia A Agra  02/27/2003 08:05:13 AM

**UNCLASSIFIED**
**3**